# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV204 |
| | ) | |
| $447,815.00 IN U. S. CURRENCY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AVON CARROLL, | ) | |
| | ) | |
| Claimant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the motion for judgment on the pleadings filed by Claimant Avon Carroll (Docket No. 17), and the government's motion to strike Claimant's answer to the forfeiture complaint pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions or, alternatively, for summary judgment (Docket No. 38). For the reasons stated herein, this Court recommends that Claimant's motion be denied and that the government's motion to strike be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a civil *in rem* action brought by the United States under 21 U.S.C. § 881(a)(6) for the forfeiture of defendant property because it was allegedly furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds from such an

exchange. (Docket No. 1 at 1.) This action is also brought under 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the defendant property because it allegedly constitutes or is derived from proceeds traceable to unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an offense, specifically the exchange of a controlled substance. (*Id*.)

The defendant property is $447,815.00 in U. S. currency which was seized on October 29, 2008, in Durham, North Carolina., during a traffic stop. Durham police officer Brandon Parrott stopped a Honda Accord being driven by Antoine Lamont Goodson. (Docket No. 39, Ex. B at 1.) Mr. Goodson appeared nervous to the officer and stated he was traveling from Baltimore, Maryland, to Charlotte, North Carolina, to visit his girlfriend. (*Id*. at 2.) The car was not registered to Mr. Goodson. (*Id*. at 3.) Mr. Goodson told the officer that the car was registered to his uncle, David Bratton. (*Id*.) The officer's suspicion of criminal activity was heightened when Mr. Goodson said he owned a 2006 Acura but wanted to keep miles off that car so he borrowed the Honda. (*Id*.)

Mr. Goodson gave Officer Parrott permission to search the vehicle. (*Id*. at 5.) Officer Parrott and his back-up, Officer McDonough and Corporal Gaddy, then searched the vehicle and discovered a large, suspicious speaker box in the trunk and an amplifier. (*Id*. at 5.) The officers removed the amplifier and discovered that it had an access door with hinges. (*Id*.) The officers removed the hinges and a hydraulically controlled piston broke through the wooden access door. (*Id*. at 6.) Upon opening the door, the officers discovered twenty-three bundles of currency wrapped in rubber bands and clear plastic wrap. (*Id*.) When asked if

he was going to claim the money, Mr. Goodson stated that did not know what the officer was talking about. (*Id*.) A police canine gave a positive alert to the presence of narcotics where the money was found in the vehicle. (*Id*. at 7.) At police headquarters, several bundles of the currency were placed in a "clean" paper bag, and the same canine gave a positive alert again for the odor of narcotics. (*Id*. at 8.)

DEA task force officers Kyle York and Brian Black interviewed Mr. Goodson. (Docket No. 39, Ex. A at 9.) Mr. Goodson told them that he was going to an auto auction in Charlotte, North Carolina, to buy cars and then continue to somewhere along I-95 in South Carolina to buy clothing at clothing outlets. (*Id*.) He did not provide a reason why he told Officer Parrott that he was going to see his girlfriend in Charlotte. (*Id*.) He also could not provide the name of the auto auction to which he was going or the name of any clothing outlets in South Carolina. (*Id*.) Mr. Goodson then terminated the interview and asked for an attorney. (*Id*.)

The Drug Enforcement Administration began an administrative forfeiture proceeding on the seized money. (*Id*. at 10.) Mr. Carroll submitted a claim to all of the money on December 23, 2008. (*Id*.) As a result, the administrative forfeiture process was terminated, and the government began this judicial forfeiture proceeding. (*Id*. at 11.) The vehicle was released to its lienholder. (*Id*.)

The government filed its complaint for forfeiture against the seized currency on March 20, 2009. (Docket No. 1.) On February 17, 2010, Claimant Carroll filed a verified

*pro se* claim stating that he is the owner of all of the currency in question. (Docket No. 11.) Claimant Carroll filed a motion for judgment on the pleadings on June 23, 2010. (Docket No. 17.) His primary argument is that the government has failed to allege and prove any connection between the seized currency and a prohibited drug transaction.[1] (*Id*. at 12-13.) The government responds by arguing that the forfeiture complaint easily satisfies its burden at this stage of the proceeding. (Docket No. 19.)

On May 6, 2011, the government filed a motion for summary judgment or to strike Claimant Carroll's claim and answer to the forfeiture complaint. (Docket No. 38.) It contends that Claimant lacks standing to seek return of the currency and, alternatively, that he can neither controvert the government's case nor carry his burden of showing that he is an innocent owner. (Docket No. 39.)

## DISCUSSION

**A.    Standard**

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-

---

[1] Claimant stated at deposition that he was sending the currency to North Carolina via Mr. Goodson who was to give the speaker box with the currency inside to a female, Lakeysha Gillis. (Docket No. 39, Ex. E1 at 116-20.) Ms. Gillis was to hold the money until Claimant arrived in North Carolina, about a week later, and retrieved it to use in purchasing used cars at southern car auctions to be shipped back north to Maryland. (*Id*.)

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. (*Id.* at 255.) The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (*Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is determined by the same standard applied to a motion to dismiss for failure to state a claim upon which relief may be granted. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

**B.** **<u>Standing</u>**

Because of its effect on the jurisdiction of this Court, the Court will first address the issue of claimant's Article III standing to contest the forfeiture of the currency. *See United States v. Real Property Located at 5201 Woodlake Drive*, 895 F. Supp. 791, 793 (M.D.N.C.

1995) (Article III standing is threshold question because of limitation of court jurisdiction to cases and controversies).

Generally, a bare assertion of ownership, even under oath, is insufficient to establish standing in a civil forfeiture proceeding. *See id*. at 794 (citing *United States v. $38,570 United States Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992).) This district applies the "dominion and control" test in civil forfeiture cases. *See United States v. $7,000.00 in U. S. Currency*, 583 F. Supp. 2d 725, 729 (M.D.N.C. 2008) (finding that Fourth Circuit would "almost assuredly" apply this test). The "dominion and control" test requires more than bare legal title to confer standing upon a claimant. *Id*. at 729-30. Under this test, even legal owners of property must "demonstrate some dominion or control or other indicia of true ownership beyond mere legal title." *Id*. at 730.

In this action Claimant Carroll attempts to show standing based merely upon his assertion of ownership. There is no dispute that Claimant was not present at the time of seizure, was not an occupant of the vehicle at the time, and was not the owner of the vehicle in which the police discovered the currency. Claimant contends that his interrogatory answers and deposition testimony which assert his ownership are sufficient to confer standing and that any determination of the credibility of such testimony must be made later in the proceeding. (*See* Docket No. 46 at 2-3.) However, it is clear that such testimony standing alone, credible or not, is not sufficient to confer standing. *See Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (claim of ownership of currency standing alone

insufficient to establish standing); *$38,570 United States Currency*, 950 F.2d at 1112-13 (normal requirement of verified statement of ownership *plus* supplemental evidence is unnecessary in this case because government admits claimant's relationship to currency in its complaint including claimant's presence at scene of seizure); *Arevalo v. United States*, No. 05-110, 2011 WL 442054 (E.D. Pa. Feb. 8, 2011) (self-serving interrogatory answers and deposition testimony of claimant that seized property was his insufficient to show colorable interest in property and confer standing); *United States v. $29,550.00 in U. S. Currency*, No. 05-3139-CV-S-RED, 2006 WL 148992 (W.D. Mo. Jan. 18, 2006) (claimant's statements of ownership of currency in his "complaint" and verified statement insufficient to confer standing).

Claimant Carroll argues that his deposition testimony and interrogatory answers are sufficient to show a "facially colorable interest" in the currency and that at this stage he need not prove the merits of his claim. (Docket No. 46 at 3.) Although Claimant need not prove his case at this stage, the cases cited in the preceding paragraph demonstrate that without some other evidence of ownership, Claimant's testimony does not establish a "facially colorable interest" sufficient to confer standing to contest the forfeiture.

Finally, Claimant argues that there was a bailment of the currency from him to the driver of the vehicle, Mr. Goodson. (*Id.*) In making this argument, Claimant is responding to the government's argument that there can have been no bailment under Maryland law because the parties did not come to an agreement on the accomplishment of a certain purpose

with the currency and there was no acceptance of the currency by Mr. Goodson due to the conflicting statements of both Mr. Goodson and Claimant. (Docket No. 39 at 10-11.)

Claimant has not produced any evidence from Mr. Goodson regarding the transfer of the currency to support his claim of a bailment. When interviewed by police after the traffic stop, Mr. Goodson did not mention Claimant much less identify Claimant as the one who gave him the money. Rather, Mr. Goodson stated that he was an entrepreneur who owned a clothing store and that he was going to North Carolina to buy cars and then purchase clothing at outlet stores. (Docket No. 39, Ex. A at 9.) This differs materially from the testimony of Claimant at deposition to the effect that he had told Mr. Goodson that he had placed $20,000 in the speaker box for Mr. Goodson to take to North Carolina and give to a friend of Claimant whose son needed an operation. (*Id.*, Ex. E1 at 112-13.) Claimant's contention that a bailment was created therefore does not advance his claim of a sufficient ownership interest in the currency. It is but another form of an insufficient, bare assertion of ownership–as well as one that is at odds with the story of the other person with whom the bailment was allegedly created.

Claimant Carroll has failed to establish Article III standing in this action. The government's additional arguments need not be reached. Claimant's claim (Docket No. 11) and answer (Docket No. 12) should be stricken for lack of Article III standing. *See $29,550.00 in U. S. Currency*, 2006 WL 148992, slip op. at 4. Claimant's motion for judgment on the pleadings should be denied.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Government's motion to strike the claim and answer of Avon Carroll (Docket No. 38) be granted.

**IT IS FURTHER RECOMMENDED** that Claimant's motion for judgment on the pleadings (Docket No. 17) be denied.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: July 26, 2011